ESTATE OF LEV H. PRICHARD *v.* UNITED STATES (No. 4847)[1]

---

United States Court of Customs and Patent Appeals, April 3, 1956

*Barnes, Richardson & Colburn* (*James F. Donnelly* and *E. Thomas Honey* of counsel) for appellant.

*Warren E. Burger*, Assistant Attorney General, *Richard E. FitzGibbon*, Chief, Customs Section (*Richard H. Welsh*, trial attorney, of counsel), for the United States.

[Oral argument February 8, 1956, by Mr. Donnelly and Mr. FitzGibbon]

Before O'CONNELL, Acting Chief Judge, and JOHNSON, WORLEY, and JACKSON (retired), Associate Judges

O'CONNELL, Acting Chief Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered pursuant to its decision, C. D. 1683, overruling the protest of the importer and sustaining the action of the Collector of Customs in imposing a duty on the motor-propelled yacht "Lev III" under paragraph 370 of the Tariff Act of 1930, which reads as follows:

Par. 370. Airplanes, hydroplanes, motor boats, and parts of the foregoing 30 per centum ad valorem. The term "motor boat," when used in this Act, includes a yacht or pleasure boat, regardless of length or tonnage, whether sail, steam, or motor propelled, owned by a resident of the United States or brought into the United States for sale or charter to a resident thereof, whether or not such yacht or boat is brought into the United States under its own power, but does not include a yacht or boat used or intended to be used in trade or commerce, nor a yacht or boat built, or for the building of which a contract was entered into, prior to December 1, 1927.

The quoted paragraph must be read in conjunction with section 1 of the Act which provides for the levying of duties on articles "when imported from any foreign country into the United States." The issue in the instant case is whether the yacht "Lev III" was imported into the United States within the meaning of that section.

As stated in the decision below, this case was submitted to the United States Customs Court on an agreed statement of facts which included the following:

(1) The article which is the subject of this protest was the yacht, "Lev III," which arrived at the port of Brownsville, Tex., on or about January 9, 1947.

(2) That said yacht was at all times mentioned herein registered and documented under the laws of the Republic of Panama and was not brought into the United States for sale or charter.

(3) That said yacht was not used or intended to be used in trade or commerce, nor was it built prior to December 1, 1927, nor was any contract entered into prior to December 1, 1927, for the building of the same.

(4) That upon arrival of the said yacht at the port of Brownsville, Tex., the

master entered the same as a vessel to comply with the statutory provisions and regulations governing the arrival and entrance of seagoing vessels subject to the navigation laws of the United States.

(5) That the following documents were tendered by the master of the said yacht "Lev III" to the deputy collector of customs in compliance with the aforesaid vessel entry requirements: Form 1385, of the Department of Commerce entitled "Coasting Manifest" and the outward manifest and coastwise permit issued at the port of Brownsville February 12, 1947, which were received in evidence as exhibits 1 and 2, respectively.

(6) That the said yacht "Lev III" was at the time of entry and clearance referred to in exhibits 1 and 2, owned by Lev H. Prichard, who was a resident of the United States.

(7) At the time of arrival of the said yacht at the port of Brownsville on January 9, 1947, the owner had no intention to document her under the laws of the United States, or to sell or charter the said yacht to a resident of the United States.

(8) That, subsequent to the said arrival of January 9, 1947, and prior to February 4, 1947, the deputy collector demanded that the said owner file a merchandise consumption entry and deposit estimated duties, otherwise the said yacht would not be permitted to leave customs custody or be granted a permit to clear from the port of Brownsville.

(9) That consumption entry 1120–B, the entry under protest here, was filed under date of February 11, 1947; that, under date of February 12, 1947, as exemplified by exhibit 2, a clearance permit was issued by the deputy collector at Brownsville authorizing said yacht to proceed to New Orleans, La.

(10) That said Lev H. Prichard died on June 19, 1949, and that Jack H. Brosseau, Jr., who signed the protest herein, was duly appointed temporary administrator for the purpose of signing said protest.

(11) That, on the 26th day of August 1949, executors of the estate of said Lev H. Prichard were appointed.

(12) That, after the demise of Lev H. Prichard, his estate sold the aforesaid yacht to a corporation domiciled under the laws of one of the United States, said yacht remaining registered under the laws of Panama.

It was further agreed between counsel for the parties that the yacht "Lev III" was primarily intended by Lev H. Prichard for use as a pleasure ship or vessel and was bought by him for that purpose.

Imported merchandise has been defined as "merchandise that has been brought within the limits of a port of entry from a foreign country with intention to unlade." *United States* v. *Estate of Boshell*, 14 Ct. Cust. Appeals 273, T. D. 41884, and cases there cited. That definition clearly cannot be applied in the case of a yacht entering the United States under its own power, but it is evident from the express language of paragraph 370 of the Tariff Act of 1930 that such an entry may amount to an importation under that paragraph. It is therefore necessary to determine under what circumstances the act of bringing a yacht into the United States under its own power constitutes an importation.

The appellant cites a ruling of the Treasury Department, reported in 33 T. D. 292, T. D. 37376 as giving the proper definition of importation of a vessel. That ruling states that:

If coming into this country temporarily as carriers of passengers or merchandise, they are not subject to customs entry or the payment of duty, but if brought into the United States permanently they are to be considered and treated as imported merchandise.

Assuming that definition to be correct, it is evident that the word "permanently," in the case of a sea-going vessel would not preclude the use of the vessel for cruises abroad after its importation. It is also evident that the question as to whether a vessel is brought into the United States "permanently" must be determined on the basis of intent.

In the instant case, the exhibits and the agreed facts show that the yacht "Lev III" was bought by Lev H. Prichard and, after stopping at Key West, Florida, for fuel, left that port on January 3, 1947, and arrived at Brownsville, Texas, on January 9, 1947. On February 4, 1947, the Deputy Collector at Brownsville demanded that the owner file a merchandise consumption entry and deposit estimated duties, and stated that the yacht would not be allowed to clear from Brownsville unless that was done. The demand of the Deputy Collector was complied with and a clearance permit was issued on February 12, 1947, authorizing the yacht to proceed to New Orleans, Louisiana. On February 17, 1947, a clearance for the yacht was issued at New Orleans for Havana, Cuba. All the clearance papers indicate that no cargo was carried.

Lev H. Prichard died on June 19, 1949, and on August 26, 1949, executors of his estate were appointed by the County Court of Cameron County, Texas, in which county Brownsville is located. The "Lev III" was documented under the laws of Panama and it is stated in the agreed facts that Prichard had no intention of documenting her under the laws of the United States or of selling or chartering her to a resident of the United States. Otherwise, there is no direct evidence as to his intentions with respect to the yacht, and such intentions must be determined on the basis of circumstances.

We are of the opinion that the circumstances of this case justify the conclusion that the yacht "Lev III" was imported into the United States within the meaning of the Tariff Act of 1930, when she arrived at the port of Brownsville. The record is silent as to the purpose for which the yacht was brought to that port, but since she was a pleasure ship and carried no cargo, the only reasonable presumption is that such purpose was a pleasure voyage, and the subsequent prompt departure of the yacht without cargo for New Orleans and Havana seems to strengthen that presumption.

Prichard was a resident of the United States and there is no evidence that he ever changed such residence or intended to do so. It is logical to suppose, therefore, that, although the yacht might be taken

abroad whenever he so desired, its use would be based in the home port in the United States. We consider that, at least in the absence of clear evidence to the contrary, a resident of the United States who buys a pleasure yacht abroad and brings it to this country must be presumed to intend to use it in this country to such an extent as to make it properly classifiable as an import.

Appellant relies strongly on the fact that the "Lev III" was documented under the laws of Panama as indicating that there was no intent to import her. In that connection it is noted that in the case of *David B. Roberts* v. *United States*, 17 C. C. P. A. (Customs) 215, T. D. 43653, which involved the importation of a motor yacht, and in which one of the contentions of the appellant was "that the yacht was not imported into the United States as that word is used in the Tariff Act" this court said:

The provisional certificate of registry, *the permanent documentation*, the consolidated certificate, of enrollment and yacht license etc., are not, we think, relevant to the issue nor determinative of it. [Emphasis added.]

Even assuming, however, that the Panamanian documentation is relevant to the issue of importation, it is evident that it is not controlling thereon, but is merely one circumstance which may be considered. Under all the circumstances of the present case, including the fact that the yacht was documented under the laws of Panama, we find that the holdings of the collector and the Customs Court that the yacht was imported are sufficiently supported by the record.

The appellant contends that the action of the Deputy Collector at Brownsville in refusing to allow the "Lev III" to clear from that port unless a consumption entry was made was illegal. Since the yacht was imported and properly dutiable at Brownsville, the requirement of the Deputy Collector that a consumption entry be made was proper. Whether the Deputy Collector was justified in withholding clearance papers until the consumption entry was made is not, in our opinion, material to the issue here and need not be determined.

The decision of the United States Customs Court is *affirmed.*

WORLEY, J., concurs in the conclusion.

JACKSON, J., retired, recalled to participate.

COLE, J., because of illness, did not participate in the hearing or decision of this case.